**Affirmed and Opinion filed October 26, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00553-CV

---

**STEVEN WORMALD AND ELIZABETH ANNE WORMALD, Appellants**

**V.**

**NORMAN VILLARINA, DOUG WERTHEIMER, AARON SNEGG, MCGUFFY CREDIT FACILITY 1, LLC, MCGUFFY INTERNATIONAL COMPANY, MCGUFFY GROUP, INC., MCGUFFY DISTRIBUTION, LLC, MCGUFFY POWER SYSTEMS, INC., NV FIELD SERVICES, LLC, MCGUFFY ENERGY SERVICES, LLC, MCGUFFY LIMITED, PENRITH, INC., Appellees**

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2014-56677**

---

## O P I N I O N

This accelerated appeal of the granting of three special appearances arises out of a borrower-lender dispute. After the lender, a limited liability company, brought a collection suit against the borrowers and guarantors, the guarantors filed a counterclaim against the lender and filed various claims against others. The

guarantors now challenge the trial court's granting of the special appearances of three California residents whom the guarantors allege are partners involved in the lender's management. The guarantors assert that the trial court erred in concluding it lacked personal jurisdiction over the California partners because (1) the partners are alter egos of the Texas limited-liability company that holds the note, (2) the partners committed torts and fraud in Texas, and (3) one of the partners listed himself as the registered agent for Texas limited-liability companies. We conclude that the trial court did not err in granting the special appearances because the partners did not have sufficient contacts with Texas to confer personal jurisdiction. We affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

McGuffy Credit Facility 1, LLC made two loans — one for more than $4.3 million and a second for more than $1 million — to McGuffy International Company, McGuffy Group, Inc., McGuffy Distribution, LLC, McGuffy Energy Services, LLC, McGuffy Power Systems, Inc., and NV Field Services, LLC (collectively, the "McGuffy Borrowers"). The McGuffy Borrowers executed promissory notes for each loan to McGuffy Credit Facility. The promissory notes were secured by assets of the McGuffy Borrowers. Steven Wormald and Elizabeth Anne Wormald guaranteed the notes.

### The Lender's Suit Against the McGuffy Borrowers and the Guarantors

McGuffy Credit Facility brought suit against the McGuffy Borrowers and the Wormalds, alleging that the McGuffy Borrowers and the Wormalds were indebted to McGuffy Credit Facility. McGuffy Credit Facility asserted a breach-of-contract claim against the McGuffy Borrowers and the Wormalds, a breach-of-guaranty claim against the Wormalds, and a fraud claim against the McGuffy Borrowers. McGuffy Credit Facility requested a temporary restraining order and

2

the appointment of a receiver.

*The McGuffy Borrowers' and the Guarantors' Counterclaims*

The McGuffy Borrowers and the Wormalds asserted counterclaims against McGuffy Credit Facility and other associated entities and individuals who manage those entities based on the seizure of assets and related actions. In particular, the Wormalds asserted that McGuffy Credit Facility misrepresented the nature of the notes by suggesting that the Wormalds would be entitled to remedies the notes did not include. The Wormalds contend that McGuffy Credit Facility breached a fiduciary duty and committed other torts when it seized the McGuffy Borrowers' assets and transferred them to V-Gas, LLC. Additionally, the Wormalds contend that McGuffy Credit Facility disparaged their business and defamed the Wormalds based on communications McGuffy Credit Facility sent to employees and clients after the seizure.

Aaron Snegg, Norman Villarina, and Doug Wertheimer manage a limited-liability company, ICECM, LLC, which is the sole manager of McGuffy Credit Facility and V-Gas, LLC. In their live pleading, the Wormalds incorporated their counterclaims against McGuffy Credit Facility and asserted them against Snegg, Villarina, and Wertheimer. The Wormalds also alleged that McGuffy Credit Facility is an alter ego of Snegg, Villarina, and Wertheimer.

*Special Appearances*

Snegg, Villarina, and Wertheimer filed special appearances that contained no verifications. The trial court held a hearing on pending motions later that day. Trial counsel for Villarina, Snegg, and Wertheimer, who also represented McGuffy Credit Facility, appeared at the hearing. At the beginning of the hearing, trial counsel mentioned the due-order-of-pleadings rule and requested that the trial

court grant a continuance because the pending motions affected the interests of Snegg, Villarina, and Wertheimer and they could not participate in the hearing due to their special appearances. The trial court granted a continuance on all motions that affected Snegg, Villarina, and Wertheimer, but ruled on one motion, subject to the special appearance, that the trial court concluded did not affect Snegg, Villarina, and Wertheimer. The next day, Snegg, Villarina, and Wertheimer filed amended special appearances.

Snegg, Villarina, and Wertheimer contended that the trial court lacked personal jurisdiction over them because they are California residents who had not traveled to Texas except to conduct business that was unrelated to the lawsuit. Snegg, Villarina, and Wertheimer asserted that McGuffy Credit Facility maintained its corporate separateness.

The Wormalds filed several supplementary responses in which they attached additional evidence that they argued showed (1) McGuffy Credit Facility is the alter ego of Snegg, Villarina, and Wertheimer and (2) Snegg, Villarina, and Wertheimer traveled to Texas to conduct business related to the litigation. Villarina, Snegg, and Wertheimer filed responses.

Ultimately, the trial court signed an order granting the special appearances of Snegg, Villarina, and Wertheimer. The Wormalds challenge this order in this appeal.

### ANALYSIS

The Wormalds argue that Snegg, Villarina, and Wertheimer (1) waived their special appearances and (2) failed to negate all bases of possible jurisdiction.

### A. Did Snegg, Villarina, and Wertheimer waive their special appearances?

The Wormalds contend that Snegg, Villarina, and Wertheimer waived their

4

special appearances because they appeared generally before filing verified special appearances. The Wormalds contend that Snegg, Villarina, and Wertheimer appeared generally on two occasions. According to the Wormalds, first, Snegg, Villarina, and Wertheimer appeared through counsel and asked for a continuance before amending their special appearances, which were defective. Second, the Wormalds assert that Snegg, Villarina, and Wertheimer appeared by filing a motion on April 4, 2016, seeking dismissal of the Wormalds' claims against them. While the dismissal motion states that it was filed on behalf of other entities, the Wormalds argue that because the entities are alter egos of Snegg, Villarina, and Wertheimer, the motion was really filed on behalf of Snegg, Villarina, and Wertheimer. Snegg, Villarina, and Wertheimer take the position that trial counsel did not appear on their behalf at the hearing where counsel requested a continuance and that the April 4, 2016 motion could not have been filed on their behalf because they had not yet been served in the lawsuit.

Under Texas Rule of Civil Procedure 120a, a defendant may object to the court's exercise of personal jurisdiction over the defendant by making a special appearance. Tex. R. Civ. P. 120a. The defendant may make a special appearance by sworn motion filed before any motion to transfer venue or any other plea, pleading, or motion and may amend the special appearance to cure defects. *Id.* A special appearance that is unsworn or unverified is defective, but an amendment that adds a verification cures the defect. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 321–22 (Tex. 1998). A defendant may file an amended special appearance any time before making a general appearance. *Id.* A party enters a general appearance, and so waives its special appearance, if the party invokes the judgment of the court on any question other than the court's jurisdiction or recognizes by the party's acts that an action is properly pending against the party. *See Exito Elecs.*

5

*Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam).

We need not address whether trial counsel was representing Snegg, Villarina, or Wertheimer when trial counsel asked for the continuance because trial counsel's motion for a continuance was not a general appearance. Trial counsel's motion did not invoke the judgment of the court or recognize that an action in the court was properly pending against Snegg, Villarina, or Wertheimer. *See Experimental Aircraft Ass'n Inc. v. Doctor*, 76 S.W.3d 496, 502 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that a party did not generally appear by moving to continue proceedings until trial court could rule on special appearance). The motion was consistent, not inconsistent, with challenging jurisdiction. *See id.*

As we explain below, the Wormalds did not prove that McGuffy Credit Facility is the alter ego of Snegg, Villarina, or Wertheimer, so any answer by McGuffy Credit Facility did not waive the special appearances of Snegg, Villarina, and Wertheimer. Furthermore, if McGuffy Credit Facility were the alter ego of Snegg, Villarina, or Wertheimer, the trial court would have personal jurisdiction over them for that reason, and there would be no need to address whether any party waived the party's special appearance. Snegg, Villarina, and Wertheimer did not waive their special appearances. We now consider whether they are subject to personal jurisdiction in Texas.

**B. Did the trial court have personal jurisdiction over Snegg, Villarina, and Wertheimer?**

*Principles of Personal Jurisdiction and Standard of Review*

Whether Snegg, Villarina, and Wertheimer are subject to personal jurisdiction in Texas is a question of law, which we review de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When the

6

trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *M&F Worldwide Corp. v. Pepsi–Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 884–85 (Tex. 2017).

The exercise of personal jurisdiction in Texas state courts turns on both federal and state law. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). Courts may exercise personal jurisdiction over a defendant when (1) the Texas long-arm statute grants jurisdiction, and (2) the exercise of jurisdiction comports with federal constitutional guarantees of due process. *Id.* The long-arm statute allows Texas courts to exercise personal jurisdiction as far as the federal constitutional requirements of due process will permit, so Texas courts may exercise personal jurisdiction as long as doing so comports with federal constitutional guarantees of due process. *Id.* A trial court's exercise of personal jurisdiction comports with due process when (1) the defendant has established minimum contacts with the forum state and (2) asserting personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Searcy*, 496 S.W.3d at 66.

A defendant's contacts with the forum may give rise to either general or specific jurisdiction. *M&F Worldwide Corp.*, 512 S.W.3d at 884–85. A court has general jurisdiction over a defendant if the defendant has made continual and systematic contacts with the forum. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). The defendant's contacts with the forum must "render it essentially at home in the forum." *Searcy*, 496 S.W.3d at 72. If the trial court has personal jurisdiction over a corporation that is the alter ego of an individual, the trial court may base personal jurisdiction over the individual upon its jurisdiction over the corporation. *See Puri v. Mansukhani*, 973 S.W.2d 701, 712

(Tex. App.—Houston [14th Dist.] 1996, no pet.). If a plaintiff alleges an alter-ego theory to support a claim of personal jurisdiction, the plaintiff must prove the allegation because Texas law presumes that the corporation and the defendant are distinct entities. *See BMC Software*, 83 S.W.3d at 798.

Specific jurisdiction exists when the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *See Moki Mac*, 221 S.W.3d at 575–76. For Snegg, Villarina, or Wertheimer's contacts with Texas to support the exercise of specific jurisdiction, there must be a substantial connection between the purposeful contacts with Texas and the operative facts of the litigation. *See id.* at 585. If we determine Snegg, Villarina, or Wertheimer had sufficient minimum contacts with Texas and the contacts are substantially connected to the operative facts of the litigation, we must ensure the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Fjell Tech. Grp. v. Unitech Int'l, Inc.*, No. 14-14-00255-CV, 2015 WL 457805, at *9 (Tex. App.— Houston [14th Dist.] 2015, pet. denied) (mem. op.).

*Alter-Ego Theory of Personal Jurisdiction*

Snegg, Villarina, and Wertheimer each filed affidavits in which they asserted individually that they are partners, living in California, with fractional interests in a non-Texas entity that owns a fractional interest in another non-Texas entity that before the suit owned a fractional interest in the out-of-state entity that manages McDuffy Credit Facility. Each affiant recites that each entity maintains corporate separateness and that neither Snegg, Villarina, nor Wertheimer profited personally from any transactions at issue in the case. The record also contains an affidavit from Nghiep John Ngheim, a representative of McGuffy Credit Facility. Ngheim avers that McGuffy Credit Facility, Industry Capital, V-Gas, LLC, ICECM, LLC, and Industry Capital Management, LLC, maintain separate bank

8

accounts, separate books, and separate records. Ngheim states that the entities do not comingle funds and each entity maintains separate ownership of its assets. According to Ngheim, none of the entities permits its funds to be used for the personal benefit of its owners, employees, or managers.

The Wormalds filed several documents in camera in the trial court that they argue show that McGuffy Credit Facility is an alter ego for Snegg, Villarina, and Wertheimer. A cash-flow summary shows cash flows to and from McGuffy Credit Facility. The cash-flow summary shows that partners made capital contributions totaling over $5.6 million to McGuffy Credit Facility. McGuffy Credit Facility loaned the McGuffy Borrowers $5.2 million. The additional capital appears to have been used for business expenses. All interest payments on the loan were distributed as equity. The cash-flow summary does not provide any details about who received the equity payments. In one email communication, an individual asks about shutting down two entities and was advised not to shut down McGuffy Credit Facility because it is the plaintiff and defendant in the case against the Wormalds. Another email communication shows that in a few cases one entity paid legal bills for others. In one email exchange a vendor asked one entity to serve as a guarantor for another and the entity's officer expressed skepticism about serving as a guarantor and said that the group needed to have a board meeting to discuss the policy.

a. Legal Principles Underlying the Alter-Ego Theory

The Supreme Court of Texas has explained that when a party seeks to prove one corporation is an alter ego of another, the elements required to pierce the corporate veil for liability purposes differ from those used for jurisdictional purposes. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007). Courts use different standards because certain elements necessary to pierce

9

the corporate veil are irrelevant to assessing jurisdictional contacts. *See id.* at 175. "To 'fuse' a parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary." *PHC-Minden*, 235 S.W.3d at 175 (quotation omitted). "The rationale for exercising jurisdiction is that the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Id.* at 173. This court has used the standard for jurisdictional veil-piercing of the corporate veil between a parent company and a subsidiary company to assess jurisdictional veil-piercing as between an individual and a corporation. *See Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 731 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

b. Evidence of Alter-Ego

The in-camera documents do not rise to the level of proof needed to show that Snegg, Villarina, and Wertheimer (or any of them) are alter egos of McGuffy Credit Facility. To the contrary, the documents show different individuals acted as officers of different entities and questioned policies that might negatively affect the entity the officer represented. And, while various corporate entities closely worked together, there is no evidence that Snegg, Villarina, or Wertheimer dominated the will of any of the entities. *See Knight Corp. v. Knight*, 367 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2012, no pet.). One vague document shows that McGuffy Credit Facility made equity distributions, but the document does not give specifics about the distributions. The same document shows McGuffy Credit Facility made significant business expenditures and also shows that the McGuffy Credit Facility kept its finances separate from the finances of Snegg, Villarina, and Wertheimer. None of these documents suggest that McGuffy Credit Facility was

10

not maintained as a distinct entity or that Snegg, Villarina, or Wertheimer directed the business operations and affairs of McGuffy Credit Facility any more than normally is associated with ownership and directorship. *See S.L.A. Studio Land, Inc. v. SRC Const., Inc.*, No. 14-10-01129-CV, 2011 WL 5118902, at *7 (Tex. App.—Houston [14th Dist.] Oct. 27, 2011, pet. denied) (mem. op.).

The Wormalds argue that the evidence Snegg, Villarina, and Wertheimer tendered is conclusory. Even if the evidence is conclusory, the Wormalds had the burden to prove that each of these individuals is an alter ego of McGuffy Credit Facility. *See BMC Software*, 83 S.W.3d at 798.

Based on the record evidence, the trial court was entitled to find that the Wormalds did not put on sufficient proof to impute McGuffy Credit Facility's contacts to Snegg, Villarina, or Wertheimer. *See Greenfield Energy, Inc.*, 252 S.W.3d at 731. Having concluded that McGuffy Credit Facility's contacts cannot be imputed to Snegg, Villarina, or Wertheimer, we turn now to the allegations that the trial court had personal jurisdiction over Snegg, Villarina, and Wertheimer based on their own contacts.

*Direct Theory of Personal Jurisdiction*

In their appellate brief, the Wormalds allege that Snegg, Villarina, and Wertheimer "have purposefully availed themselves of the privileges of conducting activities within Texas," and "this lawsuit arose from and is related to their contacts with Texas."[1] The Wormalds argue that Snegg, Villarina, and Werthimer had the burden to negate jurisdiction and that they failed to do so because they did not provide any documentary evidence and the evidence they provided came from interested parties. Arguing that interested witnesses can establish facts as a matter

---

[1] The Wormalds do not assert that the trial court may exercise jurisdiction based on general jurisdiction, and any such argument would lack merit.

11

of law only when the evidence is not controverted, the Wormalds argue that Snegg, Villarina, and Wertheimer did not negate jurisdiction as a matter of law because their evidence raised fact issues about these individuals' contacts with Texas and because these individuals' assertions rested on the fiduciary-shield doctrine, which does not apply to this case. In particular, the Wormalds argue that Villarina's evidence did not negate jurisdiction because Villarina held himself out to be a Texas resident. The Wormalds assert that he did not deny doing business in Texas and did not deny that the Wormalds' suit is related to his contacts with Texas. The Wormalds argue that Snegg's and Wertheimer's evidence is insufficient because neither denies doing business in Texas or that their contacts relate to the Wormalds' suit.

### a. Minimum-Contacts Standards

In some situations the fiduciary-shield doctrine protects employees from personal jurisdiction when the employee acted on behalf of his employer. *Urban v. Barker*, No. 14-06-00387-CV, 2007 WL 665118, at *6 (Tex. App.—Houston [14th Dist.] Mar. 6, 2007, no pet.) (mem. op.). But, even if an employee's actions are performed on behalf of an entity, the employee may be subject to personal jurisdiction and held liable in his individual capacity for certain claims, such as claims based on tortious acts or fraud. *See id.* The Wormalds' live pleadings include allegations of tortious acts and fraud. In their special appearances, though, Snegg, Villarina, and Wertheimer asserted that they did not have sufficient minimum contacts with Texas to give rise to jurisdiction.

We analyze minimum contacts for specific jurisdiction on a claim-by-claim basis unless all claims are based on the same alleged forum contacts. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151. For a Texas court to exercise personal jurisdiction based on specific jurisdiction, the court must find a substantial connection between

12

the nonresident's purposeful contacts with Texas and the operative facts of the litigation. *See Moki Mac*, 221 S.W.3d at 585. Whether a court has personal jurisdiction is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002). But in resolving this question of law, a trial court often must resolve questions of fact. *Id.* at 806. On appeal, we review de novo the trial court's determination to grant or deny a special appearance, and we likewise may be called upon to review the trial court's resolution of a factual dispute. *Id.* When the trial court does not issue findings of fact, we presume that the trial court resolved all factual disputes in favor of its judgment. *Id.*

b. Allegations Related to Contacts

In their live pleading, the Wormalds made the following allegations:

- The McGuffy Borrowers executed promissory notes, and the Wormalds guaranteed the notes.

- McGuffy Credit Facility and all defendants (including Snegg, Villarina, and Wertheimer) misrepresented the terms of the notes by representing that the notes conferred rights, remedies, and obligations that were inaccurate.

- When the McGuffy Borrowers were unable to timely remit payment, McGuffy Credit Facility and all defendants forcibly seized control of the McGuffy Borrowers' assets.

- The value of the assets seized exceeded the debt owed.

- The seizure occurred less than two weeks after the McGuffy Borrowers failed to remit payment even though the terms of the notes gave the McGuffy Borrowers thirty days to cure any default.

- After the seizure, McGuffy Credit Facility and all defendants transferred assets from the company to other companies.

- After the seizure, McGuffy Credit Facility and all defendants defamed the Wormalds by making statements that Steven Wormald retains in various bank accounts at least $8 million he diverted from McGuffy Energy Services client payments, and that Steven Wormald owes the Internal Revenue Services (IRS), school-taxing authorities, various contactors, vendors, and

other creditors.

- After the seizure, McGuffy Credit Facility and all defendants disparaged the McGuffy Borrowers by telling former employees that the McGuffy Borrowers owe $5 million to the IRS, have secreted millions of dollars into accounts to avoid paying creditors, and that the businesses are no longer in operation. McGuffy Credit Facility and all defendants disparaged the business by telling potential clients and business associates that the McGuffy Borrowers are no longer in business.

The Wormalds allege the above cited acts give rise to claims for slander, business disparagement, fraud, breach of fiduciary duty, defamation, and claims under the Texas Deceptive Trade Practices Act (DTPA), fraudulent transfer, and civil conspiracy.[2] Snegg, Villarina, and Wertheimer filed affidavits in which each averred that he is a California resident, has no personal contacts with Texas, and traveled to Texas only for business.[3] In their response to the special appearances, the Wormalds filed documents in camera that contain communications in which Villarina discusses the dispute with the Wormalds and Villarina makes references to a business trip to Houston, Texas. The communications discuss meetings with company contacts and contain a meeting agenda. The agenda encompasses some broad due-diligence questions and financial questions.

c. Evidence Related to Texas Contacts

Contrary to the Wormalds' assertion on appeal, Snegg, Villarina, and Wertheimer argued in their special appearances that their contacts with Texas did

---

[2] The Wormalds initially asserted breach-of-contract claims, but they nonsuited these claims.

[3] In Villarina's affidavit, Villarina stated that the trips were unrelated to the claims at issue in the lawsuit. The Wormalds responded that the statement that Villarina's trips were unrelated to the claims in the lawsuit was untrue because Villarina was at the meeting where the note was executed. Villarina filed a second affidavit in which he admitted that and explained that he based the statement on his belief that the Wormalds had nonsuited their breach-of-contract claims.

14

not relate to the Wormalds' claims. In their affidavits, they detailed their travel to Texas and swore that the Texas travel did not relate to the subject matter of the lawsuit. The Wormalds asserted that Snegg, Villarina, and Wertheimer traveled to Texas and attended meetings that related to McGuffy Credit Facility business, but the Wormalds did not assert that Snegg, Villarina, or Wertheimer did anything actionable either in their personal capacity or as a partner, representative, or employee of McGuffy Credit Facility. The record contains evidence that Snegg, Villarina, and Wertheimer traveled to Texas to attend meetings, but the record does not contain any evidence of what took place at those meetings. In their appellate brief, the Wormalds attack the fiduciary-shield argument and argue that Snegg, Villarina, and Wertheimer did not present competent evidence, but the Wormalds do not make any arguments that any acts these defendants took in Texas substantially relate to the operative facts of the litigation.

The Wormalds make one argument that a specific act by Villarina — sending a defamatory email to co-defendants who are Texas residents — gives rise to jurisdiction. In the email, Villarina referred to Steven Wormald as a "crook." Even under a liberal construction of the Wormalds' live pleading, they do not assert any claim based on this email, and they did not assert in the trial court that they were basing a claim on this email. This contact does not substantially relate to the operative facts of any of the Wormalds' claims, including the defamation claim and the business-disparagement claim. Other than pointing to Villarina's sending the email, the Wormalds have not argued that Snegg, Villarina, or Wertheimer specifically made any type of misrepresentation, circulated any disparaging communications, or engaged in any actionable conduct in Texas.

d. Minimum-Contacts Analysis

In the trial court, Snegg, Villarina, and Wertheimer had the burden to negate

15

jurisdiction, but this burden did not require that the evidence present no factual issues for the trial court to resolve. *See id.* Snegg, Villarina, and Wertheimer presented competent evidence in the form of their affidavits showing no substantial connection between their contacts with Texas and the operative facts of the litigation. *See Dresser-Rand Group, Inc. v. Centauro Capital, S.L.U.*, 448 S.W.3d 577, 587 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The Wormalds assert that Villarina is subject to personal jurisdiction in Texas because he "held himself out to be a Texas resident who maintained an office in Texas." The record contains evidence that Villarina listed himself as the registered agent on the certificates of formation for both McGuffy Credit Facility and ICECM, LLC, which owns an interest in McGuffy Credit Facility. The record contains an affidavit in which Villarina states that he did not know he was required to be a Texas resident to serve as the registered agent for Texas corporations and that listing himself as the registered agent was a mistake because he is not, and was not, a Texas resident. Villarina averred that once he realized the mistake, he amended all of the documents filed with the Texas Secretary of State.

Even if Villarina's act of listing himself as a registered agent of service for Texas corporations is sufficient to show contact with Texas, there is no substantial connection between this Texas contact and the operative facts of the litigation, so this contact does not support specific jurisdiction. To the extent the Wormalds are arguing that Villarina is subject to the jurisdiction of Texas courts because he is a resident, based on the evidence that Villarina has lived in California for the past twelve years, the trial court reasonably could have found that Villarina made a mistake filling out the form. *See Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999); *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964). The trial court was entitled to credit Villarina's affidavit and conclude that Villarina made a

mistake when he filled out the form. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

The Wormalds assert that even if Villarina is not a Texas resident, he is estopped from asserting that Texas courts lack personal jurisdiction over him because that assertion contradicts his act. The Wormalds contend that by designating himself as a registered agent in Texas, he waived his right to contest personal jurisdiction. The Wormalds did not make this argument in the trial court and thus did not preserve error. *See* Tex. R. App. P. 33.1; *CMC Steel Fabricators, Inc. v. Red Bay Constructors, Inc.*, No. 14-13-00084-CV, 2014 WL 953351, at *5 (Tex. App.—Houston [14th Dist.] Mar. 11, 2014, no pet.) (mem. op.) (applying preservation-of-error requirements in special-appearance context). In their appellate brief, the Wormalds state the facts relating to Villarina listing himself as a registered agent for service of process and provide the following argument with respect to estoppel:

> Villarina waived his special appearance and is estopped from asserting that Texas courts lack personal jurisdiction over him. A person is precluded from making assertions "in plain contradiction of his former allegations or acts." *CKB & Associates, Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 656 (Tex. 1987) (quoting *Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952)). Waiver is "intentional conduct inconsistent with the assertion of a known right." *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980).

> At the very least, the signing of these documents and his consent to serve as the registered agent in Texas for a period of over two years demonstrate that Villarina has purposefully availed himself of the privileges and benefits of the laws of the State of Texas.

First, the Wormalds have not shown that the contact substantially relates to the claims against Villarina in this case. Second, by signing the form, Villarina agreed to serve as the registered agent for service of process for two corporations.

17

The Wormalds do not assert that they served either of those corporations through Villarina, and neither of those corporations challenged service of process. Third, even if the Wormalds had argued that Villarina was estopped from challenging personal jurisdiction, the trial court had discretion to conclude the Wormalds did not prove estoppel. In *CKB & Associates, Inc.*, the Supreme Court of Texas held that a party was not estopped from asserting claims because they were not inconsistent with a previous settlement agreement. *See CKB & Associates, Inc.*, 734 S.W.2d 653, 656 (Tex. 1987). In *CKB & Associates*, the court did not state which type of estoppel it was rejecting. *See id.* In *Gulbenkian*, the high court concluded that a party had not shown the elements of equitable estoppel or estoppel in pais, both of which include intent and reliance. *See Gulbenkian*, 252 S.W.2d at 932. Even if the Wormalds had preserved error, it was within the trial court's discretion to conclude that Villarina did not intend to make a false representation or that the Wormalds had not proved reliance. To the extent the Wormalds rely on any other theory of estoppel, they waived this argument due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Other than the argument that Villarina held himself out as a Texas resident and sent emails calling Steven Wormald a crook, the Wormalds have not briefed any argument that the record evidence shows a substantial connection between Snegg, Villarina, or Wertheimer's contacts with Texas and the operative facts of the litigation, so any such argument is waived due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *San Saba Energy, L.P.*, 171 S.W.3d at 338.

## CONCLUSION

Neither Snegg nor Villarina, nor Wertheimer waived his special appearance. The record does not contain sufficient evidence to prove that Snegg, Villarina, or

Wertheimer is the alter ego of McGuffy Credit Facility, or that any of the Wormalds' claims substantially relate to forum contacts of Snegg, Villarina, or Wertheimer. The record contains evidence supporting the trial court's conclusion that it lacks personal jurisdiction over these defendants, and the trial court did not err in granting their special appearances. Accordingly, we affirm the trial court's order.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Donovan and Wise.