

# NUMBER 13-24-00066-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SITRAM GERS EQUIPMENT,                                          Appellant,

v.

ZULEIMI BENITEZ,                                          Appellee.

## ON APPEAL FROM THE 423RD DISTRICT COURT
## OF BASTROP COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Benavides**

In this products liability dispute, appellant Sitram GERS Equipment (Gers) seeks relief from the trial court's denial of its special appearance. By a single issue, Gers argues that Texas lacks personal jurisdiction over it. We reverse and render.

# I.    BACKGROUND[1]

On March 4, 2022, Zuleimi Benitez, a Texas resident, sued Gers, Hy Cite Enterprises, LLC (Hy Cite), and Culinary Habana LLC d/b/a Sitram USA (Sitram USA), alleging that she suffered "severe burn injuries" when the cover of a pressure cooker manufactured by Gers and distributed by Hy Cite "suddenly and without warning failed, causing an eruption and ejection of hot boiling water and steam."[2]

Gers filed a special appearance, stating that it was a French manufacturing company organized under the laws of France, not a resident of Texas. It also explained that it "does not direct any of its products for sale in Texas, does not design its products for the Texas market, and does not advertise or conduct any business in Texas." Affiant "Frédéric Philippon of [Gers]," who represented that he was "fully competent and duly authorized" to verify certain statements on behalf of Gers, swore that the jurisdictional facts in the special appearance were "within his personal knowledge and [we]re true and correct to the best of his knowledge."

In response, Benitez argued that Gers's special appearance was not properly sworn, *see* TEX. R. CIV. P. 120a(1), as Philippon did not state the facts contained within were based on personal knowledge and/or failed to identify the basis for his knowledge. In the alternative, Benitez argued that Texas had both general and specific personal

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the Austin Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] Sitram USA was later nonsuited from the case. Hy Cite has not challenged personal jurisdiction and is not a party to this appeal.

jurisdiction over Gers. Benitez also requested a continuance to conduct jurisdictional discovery. On May 12, 2023, the date on which the trial court was originally slated to hear Gers's special appearance, the trial court signed a written order continuing the hearing and granting Benitez's request to conduct jurisdictional discovery.

On November 8, 2023, Benitez filed an amended response to Gers's special appearance, again asserting that the trial court had both general and specific jurisdiction over Gers based on its contacts with Texas. She also requested additional time to conduct further jurisdictional discovery. Attached to Benitez's response were: (1) Gers's special appearance; (2) Benitez's live pleading; (3) the Master Supply Agreement (the Agreement) between Hy Cite and Gers; (4) the affidavit of Christina Demakopoulos, Hy Cite's corporate counsel; and (5) the deposition of Philippe Begue, the CEO of Gers.

According to the Agreement, Hy Cite enjoyed the exclusive right to sell certain Gers products, including the one at issue, in "Central-, South- and North America, and the Caribbean, and the Philippines." Such products were required to comply "with the specifications, drawings and/or data submitted by" Hy Cite. Gers needed prior approval from Hy Cite to modify its "manufacturing processes that may affect in any manner whatsoever . . . any . . . attribute of" the products. Hy Cite was not obligated to purchase, nor was Gers obligated to produce, any contractual minimum volume of product.

Hy Cite and Gers also agreed that title to these products passed from Gers to Hy Cite "Free on Board (FOB)" in Le Havre, France. Hy Cite retained the right to specify to which of its distribution facilities Gers would ship its products. Specifically, the Agreement contemplated that Hy Cite could direct Gers to ship its products to distribution facilities in

3

Wisconsin, Mexico, Brazil, Argentina, the Dominican Republic, Peru, and Colombia.

According to the Agreement, end users of Gers's products would enjoy a "Warranty Period," during which Gers would guarantee these products would be, *inter alia*, "free from defects in design, material[,] and workmanship." In the event of a recall of Gers's products, Gers agreed to "undertake such recall or other corrective action" as was necessary. Nonetheless, in the event Gers "refuse[d]" to take any steps, Hy Cite was permitted to implement recall or corrective measures instead, with the associated costs passing to Gers.

Gers agreed to maintain commercial general liability insurance through an insurance carrier licensed "to do business in the United States." Gers would also "indemnify, defend, and hold harmless" Hy Cite "from and against, any and all claims . . . arising out of or resulting from . . . any actual or alleged claim or finding that the [p]roducts have caused or contributed to the death, injury[,] or illness of any person." A choice-of-law clause provided that the Agreement was "governed in accordance with the laws of the State of Wisconsin," and that, in the event of a dispute, the parties would arbitrate in "Chicago, Illinois."

In her affidavit, Demakopoulos, Hy Cite's corporate counsel, averred that Hy Cite "took action to sell the products to independent distributors throughout the United States, including independent distributors in Texas," and that Gers "was aware that Hy Cite was selling products to independent distributors throughout the United States." In her deposition, Demakopoulos denied having personal knowledge regarding Gers's awareness of Hy Cite's sales in the United States. She nonetheless explained that since

4

Hy Cite's "products are sold in every state," including Texas, she believed it "was a reasonable assumption" that Gers would know its products were sold in Texas. Demakopoulos could not recall whether she was present for negotiations of the Agreement.

In his deposition, Begue testified that he is the CEO of Gers,[3] and Philippon is "the general director of the cargo group to which Gers . . . belongs." Begue detailed that Gers does not advertise in Texas, attempt to sell any of its products in Texas, or design any products specifically for the Texas market. Approximately "99 percent" of Gers's clients are "located in France," but Gers also held distribution agreements in the United States with Hy Cite and Sitram USA, a company based in Malibu, California.

Begue explained that Gers exclusively sold the brand of product at issue here to Hy Cite and that Begue had no knowledge of "what H[y] Cite does with the products." Begue explained that during negotiations for the Agreement, Begue's conversations with Hy Cite centered on "the prices and quantities to produce," not with where the products would be sold. Begue acknowledged that, under the Agreement, Gers lacked the right to sell the product in question to any entity in the United States other than Hy Cite.

In terms of Gers's dealings with the eventual consumers of its products, Begue explained that Gers provides "no support to the end client." If an end user seeks to replace or repair a product under warranty, "he has to go to his distributor, and the distributor goes back to" Gers.

On November 9, 2023, the trial court heard arguments from counsel on Gers's

---

[3] Through an interpreter, Begue explained that the terms "president" and "CEO" are interchangeable in French, but that his position is best described in English as "CEO."

special appearance. Counsel for Gers maintained that the entity had not purposefully availed itself of Texas, and therefore could not be haled into her courts. He also argued that a continuance for additional discovery would be inappropriate, as "[t]he special appearance has been pending eleven months." Counsel for Benitez cited to Demakopoulos's statements and asserted that "it would be reasonable to infer if you are going to sell the product throughout the United States, you're going to include Texas." He also pointed to additional information gleaned during discovery and expressed a desire to conduct further discovery. The trial court responded, "Well, I'm not granting a continuance. If you had thought those depositions were necessary, they should have been done before today." At the conclusion of the hearing, the trial court took the matter under advisement.

The following day, the trial court signed an order denying Gers's special appearance. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7).

## II.    APPLICABLE LAW & STANDARD OF REVIEW

"Texas courts may assert personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute so provides and (2) the exercise of jurisdiction 'is consistent with federal and state due process guarantees.'" *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023) (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010)). Texas's long-arm statute reaches as far as federal constitutional requirements of due process permit. *Id.* Accordingly, Texas courts may exercise personal jurisdiction over a non-resident defendant "only so long as there exist

'minimum contacts' between the defendant" and Texas, and the exercise of personal jurisdiction over the defendant is consistent with "traditional notions of fair play and substantial justice." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The minimum-contacts requirement protects due-process rights by permitting a state to exercise jurisdiction over a nonresident defendant only when the defendant 'could reasonably anticipate being haled into court there.'" *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 152 (Tex. 2013)). "Minimum contacts are particularly important when," as here, "the defendant is from a different country because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system." *See CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) (orig. proceeding)*.* Further, "[i]f a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Moncrief Oil*, 414 S.W.3d at 154–55.

"Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795–96 (Tex. 2002). "[A] court has general jurisdiction over a defendant only if its 'affiliations with the [s]tate are so continuous and systematic as to render it *essentially at home* in the forum [s]tate.'" *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)) (alterations in original). "Courts do not have general jurisdiction over corporate defendants that are

7

neither incorporated in the forum state nor have their principal place of business there, absent some relatively substantial contacts with the forum state." *Id.*

A specific jurisdiction analysis involves "two co-equal components": relatedness and purposeful availment. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 347 (Tex. 2023). For the first component, "[s]pecific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum." *Marchand*, 83 S.W.3d at 796. A plaintiff "must demonstrate a 'substantial connection' between the defendant's contacts and the operative facts of the litigation." *LG Chem Am.*, 670 S.W.3d at 347.

For the second component, in products liability disputes, Texas "has adopted the 'stream-of-commerce-plus' standard to establish whether . . . purposeful availment exists." *Id.* "Under that standard, the defendant's act of placing a product into the stream of commerce does not establish purposeful availment unless there is 'additional conduct' evincing 'an intent or purpose to serve the market in the forum State.'" *Id.* (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007)). Examples of "additional conduct" include: (1) designing the product for the market in the forum state; (2) advertising in the forum state; (3) establishing channels for providing regular advice to consumers in the forum state; and (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. *Spir Star*, 310 S.W.3d at 873. "Only the defendant's contacts are relevant, not the unilateral activity of another party or third person." *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) (orig. proceeding). Further, "[a] defendant should not be subject to the

8

jurisdiction of a foreign court based upon 'random,' 'fortuitous,' or 'attenuated' contacts." *Link*, 925 S.W.2d at 595 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). Mere knowledge that a manufacturer's product will be sold in the forum state is not sufficient to establish purposeful availment. *TV Azteca*, 490 S.W.3d at 46.

"[T]he plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Initially, the plaintiff bears the burden "to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id.* "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.*; *see* TEX. R. CIV. P. 120a. "If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658–59.

"A court's authority to exercise jurisdiction over a nonresident defendant is a question of law we review de novo." *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413. "Resolving this question of law, though, may require a court to decide questions of fact." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). When, as here, the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment that are supported by the record are implied. *Kelly*, 301 S.W.3d at 657. "If the parties present conflicting evidence that raises a fact issue, we will resolve the dispute by upholding the trial court's determination." *Volkswagen Aktiengesellschaft*,

9

669 S.W.3d at 413 (quoting *TV Azteca*, 490 S.W.3d at 36 n.4).

## III.   ANALYSIS

Gers maintains that it lacks minimum contacts with Texas. As a preliminary matter, Benitez argues that Gers's special appearance was not properly sworn as "nothing in [Philippon's] verification identifies who he is or shows how he has personal knowledge of the facts he purportedly swears to."

A special appearance must "be made by sworn motion." TEX. R. CIV. P. 120a(1). "A special appearance that is unsworn or unverified is defective, but an amendment that adds a verification cures the defect." *Wormald v. Villarina*, 543 S.W.3d 315, 319 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "There is no particular form of verification required, but a verification must be based on personal knowledge." *Cantu v. Holiday Inns, Inc.*, 910 S.W.2d 113, 116 (Tex. App.—Corpus Christi–Edinburg 1995, writ denied). Here, attached to Gers's special appearance was Philippon's affidavit, in which he identified himself as "Philippon of [Gers]" and swore that the jurisdictional facts contained within the special appearance were "within his personal knowledge and [we]re true and correct to the best of his knowledge." Despite Benitez's multiple objections to Philippon's verification, at no point did Gers attempt to amend its special appearance.

"An affidavit not based on personal knowledge is legally insufficient." *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010). "The mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for such knowledge." *Priesmeyer v. Pac. Sw. Bank, F.S.B.*, 917 S.W.2d 937, 939 (Tex. App.—Austin 1996, no writ). Among other things, "[a]n affiant's position or

10

job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts." *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Begue, the company's CEO, later explained in his deposition that Philippon is "the general director of the cargo group to which Gers . . . belongs." Perhaps an employee who directs supply-chain logistics has knowledge of the extent to which his employer engages with a foreign market. But neither Philippon nor Begue made such a claim below, and we refuse to make such an assumption here. *See Heredia v. Zimprich*, 559 S.W.3d 223, 229 (Tex. App.—El Paso 2018, no pet.) ("[A]n appellate court is not permitted to make a party's argument for him.").

Gers minimizes Benitez's concerns regarding the sufficiency of the affidavit, suggesting that, because Philippon stated the facts in the special appearance were within his personal knowledge, we must accept this at face value. We reiterate that merely stating one has personal knowledge of facts is not sufficient without some surrounding explanation of how that knowledge came to be. *See Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex. 1988) (per curiam) (holding that a summary judgment affidavit was inadequate where it "fail[ed] to show how [the affiant] became familiar with the facts in the affidavit"); *see also Vince Poscente Int'l, Inc. v. Compass Bank*, No. 05-11-01645-CV, 2013 WL 1320511, at *5 (Tex. App.—Dallas Mar. 28, 2013, no pet.) (mem. op.) ("Although Shaw stated in her affidavit that her testimony was based on her personal knowledge, the affidavit did not establish how Shaw obtained personal knowledge of the facts to which she testified.").

11

And although "[a] corporate officer may testify that information concerning the company's contacts with the forum state is within his personal knowledge 'without showing with particularity how he acquired that knowledge,'" we are not convinced that the trial court was obligated to find that Philippon is a corporate officer of Gers.[4] *See Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 401 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (op. on reh'g) (quoting *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 407 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.)). Not only was Philippon's job title omitted from within the four corners of his affidavit, the actual duties and responsibilities of his role were never revealed. *See Villanova v. Fed. Deposit Ins. Corp.*, 511 S.W.3d 88, 96 (Tex. App.—El Paso 2014, no pet.) (concluding that an affidavit was "incompetent to prove the facts" contained within where affiant described her role at company and stated that the affidavit was based on personal knowledge but "contain[ed] no other statements affirmatively demonstrating how [affiant] has personal knowledge of the statements contained in it"). Accordingly, we agree with Benitez that Philippon's affidavit was defective.

Nonetheless, "an unverified special appearance does not concede jurisdiction." *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 307 (Tex. 2004) (per curiam) (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)). "[A] general appearance does not occur unless the nonresident (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts tha[t] an action is properly pending, or (3) seeks affirmative relief from the court." *Wakefield v. British Med. J. Pub. Grp.*, 449

---

[4] A literal reading of Begue's testimony suggests that Philippon is an employee "of the cargo group to which Gers . . . belongs," not an employee of Gers.

S.W.3d 172, 180 (Tex. App.—Austin 2014, no pet.) (citing *Dawson-Austin*, 968 S.W.2d at 321–22). That Philippon's affidavit may be deficient goes to the merits of Gers's special appearance, not to whether the issue of personal jurisdiction was conceded. *See Trejo*, 142 S.W.3d at 307. We will, for the purpose of our analysis, cast Philippon's affidavit from our mind's eye.

However, a trial court must decide a special appearance "on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3). At the hearing on Gers's special appearance, the trial court stated it would "review everything," and the parties all discussed Begue's deposition, in which he testified to the same jurisdictional facts as Philippon, as a key piece of evidence. *See id.* R. 120a(1); *see also Goldstein v. Sabatino*, 690 S.W.3d 287, 295 (Tex. 2024) (holding pro se respondent did not waive special appearance by challenging "personal jurisdiction at his first opportunity to offer . . . sworn testimony" rather than in a written motion). This brings us to the jurisdictional record and the merits of Gers's special appearance.

Both parties agree that the jurisdictional facts are straightforward. Benitez acknowledges that Gers, a French manufacturing company, "by no means is 'at home' in Texas." Because of this concession, we conclude that Benitez has abandoned her claim that Gers is subject to general jurisdiction in Texas. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) ("A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." (quoting *Goodyear Dunlop*

13

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).

However, Benitez maintains that the exercise of specific jurisdiction is appropriate because, at the time of the Agreement, "Gers knew and understood that Hy Cite would market, sell, and distribute Gers'[s] products nationwide in the United States, and more specifically, in Texas." The only support for this statement comes from Demakopoulos's affidavit, in which she stated that Hy Cite "took action to sell the products to independent distributors throughout the United States, including independent distributors in Texas," and that Gers "was aware that Hy Cite was selling products to independent distributors throughout the United States." Demakopoulos later acknowledged in her deposition that she had no personal knowledge "of Gers's awareness regarding Hy Cite's sale of products in the United States," although she believed it was reasonable to assume Gers was aware of Hy Cite's sales. Having just emphasized the importance of personal knowledge as it pertains to the competency of affidavits, we struggle to categorize such an assumption as reasonable in the face of Demakopoulos's explicit acknowledgment that she has no knowledge "of Gers's awareness regarding Hy Cite's sale of products in the United States." *See Jennings*, 750 S.W.2d at 762; *see also Rodriguez v. Karstens*, No. 10-14-00143-CV, 2015 WL 7074677, at *4 (Tex. App.—Waco Nov. 12, 2015, no pet.) (mem. op.). The only basis for such an assumption is presumably Demakopoulos's own familiarity with Hy Cite's sales, which we refuse to attribute to Gers.

In any event, even assuming that Gers was fully aware that Hy Cite was selling its products to independent distributors in Texas, we nonetheless conclude that this was insufficient to establish personal jurisdiction. "A product seller's 'awareness that the

14

stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.'" *TV Azteca*, 490 S.W.3d at 46; *see Moncrief Oil*, 414 S.W.3d at 147 ("[W]hat the parties thought, said, or intended is generally irrelevant to their jurisdictional contacts.").

Benitez cites to the supreme court's language in *Volkswagen Aktiengesellschaft*, where it explained that "[u]nder a stream-of-commerce-plus framework, '"a nonresident who places products into the 'stream of commerce' *with the expectation that they will be sold in the forum state*" may be subject to personal jurisdiction in the forum.'" 669 S.W.3d at 417 (quoting *TV Azteca*, 490 S.W.3d at 46). On this point, the *Volkswagen Aktiengesellschaft* Court was quoting the *TV Azteca* Court, which, in the sentence immediately following this specific passage, explained, "But even under that theory, mere knowledge that the product will be sold in the forum state is not enough." *TV Azteca*, 490 S.W.3d at 46.

We do not read *Volkswagen Aktiengesellschaft* as purporting to overrule this well-settled principle. *See, e.g.*, *World-Wide Volkswagen*, 444 U.S. at 295 ("'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."); *LG Chem Am.*, 670 S.W.3d at 347. An "expectation" that one's products will be sold and used in a forum state is sufficient for personal jurisdiction purposes only if it arises because "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297–98; *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S.

15

873, 883 (2011) (plurality op.) ("This Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."); *TV Azteca*, 490 S.W.3d at 46 ("[T]he defendant must reasonably anticipate being sued in the forum *because of* actions the defendant 'purposefully directed toward the forum state.'" (quoting *Link*, 925 S.W.2d at 595)).

Although engaging a distributor that agrees to serve as a sales agent in the forum state can be additional conduct sufficient to show purposeful availment, there is no indication that Gers participated in or encouraged Hy Cite's decision to sell products here. Begue testified that Gers does nothing to target the Texas market; it does not design its products for our consumers, advertise here, attempt to sell its products here, or provide customer support for Texans. Title transfers to Hy Cite while the products are still in France, and Hy Cite controls where the products go from there. In other words, it was Hy Cite's whims rather than Gers's conduct that swept the pressure cooker in question into Texas. *See Ford Motor Co.*, 592 U.S. at 359 ("The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984))); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 786 (Tex. 2005) ("[S]hipping hundreds of tons of raw asbestos to Houston was insufficient to establish jurisdiction absent evidence that a nonresident participated in the decision to send it there."). Benitez's contention, that agreeing to serve the United States market suffices to serve Texas, is untenable. Under this theory, Gers would be required to specifically disclaim its intent to serve the Texas market to avoid jurisdiction here. We are unaware of any court that has ever imposed such a requirement, and we decline to do so

16

here.

Benitez also points to the provisions in the Agreement that require Gers to carry an insurance policy and to indemnify Hy Cite against any claims, suggesting that these evince an expectation that Gers could be sued in Texas. Neither of these is sufficient to establish specific jurisdiction, either in isolation or in conjunction. First, if anything, agreeing to carry insurance implies that Gers hoped it would not be dragged into a courtroom anywhere in the United States and that instead, its insurance provider would cover any claims against it. Second, an agreement to indemnify a third party from claims against it is simply not the sort of purposeful activity contemplated by the Due Process Clause. *See Malay. British Assur. v. El Paso Reyco, Inc.*, 830 S.W.2d 919, 921 (Tex. 1992) (per curiam); *Gessmann v. Stephens*, 51 S.W.3d 329, 338 n.5 (Tex. App.—Tyler 2001, no pet.) ("While an indemnification agreement certainly contemplates the possibility of litigation, it does not represent the sort of purposeful direction of activities toward the forum State as contemplated by the Supreme Court in *Asahi*."). Further, the Agreement itself makes no mention of Texas. However, the terms of the Agreement are explicitly governed by Wisconsin law, suggesting that Gers was amenable to jurisdiction there rather than here. *See Michiana*, 168 S.W.3d at 792 ("[I]nsertion of a [forum selection] clause designating a foreign forum suggests that no local availment was intended.").

In sum, Gers "does not have a single contact with [Texas] short of the machine in question ending up in this state," something over which it had no control. *See Nicastro*, 564 U.S. at 886. "[J]urisdiction cannot be established where the contact creates only an '"attenuated" affiliation with the forum.'" *Moki Mac*, 221 S.W.3d at 577 (quoting *World-*

17

*Wide Volkswagen*, 444 U.S. at 297–98). Because Gers's relationship with Texas is attenuated at best, we conclude the trial court erred by denying its special appearance. *See id.* We sustain Gers's sole issue.

In the event we decided to reverse, Benitez argued that we should "remand this matter for further discovery, since there has not been any record submitted through discovery showing how much profit Gers has made from Texas sales." In certain circumstances, courts have remanded for the trial court to consider a continuance after reversing a trial court's ruling on a special appearance. *See Barron v. Vanier*, 190 S.W.3d 841, 853 (Tex. App.—Fort Worth 2006, no pet.); *see also Helmer v. Rusco Operating, LLC*, No. 03-21-00148-CV, 2022 WL 963236, at *7 (Tex. App.—Austin Mar. 31, 2022, no pet.) (mem. op.). However, in this case, the trial court explicitly stated that it would not grant Benitez's request for a continuance.

*BMC Software Belgium, N.V. v. Marchand* is instructive on this issue. 83 S.W.3d at 800. In that case, the trial court denied the plaintiff's request for a continuance and denied the nonresident defendant's special appearance. *Id.* at 792. The supreme court reversed the trial court's ruling on the defendant's special appearance. *Id.* However, it held that the trial court did not abuse its discretion in denying the plaintiff's motion for continuance because "the record shows that [the plaintiff] had ample time to conduct, and did conduct, discovery." *Id.* at 800. The special appearance was filed seven months prior to the trial court's hearing on the matter, and the plaintiff conducted a deposition and propounded written discovery. *Id.* The facts in this case are similar; the special appearance was filed eleven months prior to the trial court's hearing, and Benitez was

able to depose both Begue and Demakopoulos. *See id.* Accordingly, we conclude the trial court did not abuse its discretion in denying Benitez's motion for continuance, and we decline her request to remand for another bite at the continuance apple.

## IV. CONCLUSION

We reverse the trial court's judgment, and we render judgment granting Gers's special appearance and dismissing the claims against it for lack of personal jurisdiction.

GINA M. BENAVIDES
Justice

Delivered and filed on the
15th day of August, 2024.